UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

SUSAN SOLMAN,

    Plaintiff,

vs.

BAPTIST HEALTH SOUTH FLORIDA, INC.;
BAPTIST HEALTH MEDICAL GROUP, INC.; and
DOES 1-10,

    Defendants.

Case No. 1:24cv20257

## COMPLAINT

Susan Solman, by and through her attorneys, NYE, STIRLING, HALE, MILLER & SWEET, LLP and ROSENQUEST LAW FIRM P.A., states and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, Susan Solman ("Plaintiff" or "Dr. Solman"), is a T2-T3 paraplegic. She was paralyzed from the chest down after she had a tumor removed from her spinal cord over 20 years ago. Dr. Susan Solman is a clinical pharmacist, a podiatric physician, and an Associate Professor of Pharmacology at Florida International University - Herbert Wertheim College of Medicine where she specializes in disability and inclusion in healthcare facilities. Because of her disability, Dr. Solman is limited in the major life activity of walking and utilizes a wheelchair for mobility purposes.

2. Defendants, Baptist Health South Florida, Inc., Baptist Health Medical Group, Inc., and Does 1 through 10 ("Defendants" or "Baptist"), intentionally discriminated against Dr. Solman

1

by violating the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act (the "Rehabilitation Act") by refusing to treat Plaintiff at Defendants' diagnostic facility. Specifically, Plaintiff was confronted with an inaccessible diagnostic table at Defendants' medical facility and when she requested transfer equipment to safely transfer to the diagnostic table, Defendants refused to treat her and, inexplicably, had Dr. Solman forcibly removed from the facility.

3. Dr. Solman brings this action individually to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure her full and equal enjoyment, and a meaningful opportunity to participate in and benefit from, Defendants' healthcare services. Dr. Solman seeks declaratory, injunctive, and equitable relief, compensatory damages, and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of the ADA and the Rehabilitation Act.

4. Dr. Solman visited Defendants' facility in Florida and was denied full and equal access as a result of Defendants' improper practices, policies, and/or procedures for persons with disabilities. Defendants denied Dr. Solman access to its facility because it did not provide appropriate accommodations or wheelchair access as required by the ADA and the Rehabilitation Act.

5. By failing to make its facilitiies accessible to mobility-impaired persons, Defendants, public accommodations subject to Title III of the ADA, deprive disabled persons, including Plaintiff, of the full benefits of Defendants' healthcare services—all benefits they afford nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA is meant to redress.

6. Defendants have demonstrated through their interactions with Plaintiff that they have adopted policies, practices, and/or procedures of refusing to provide accessible healthcare to the disabled, and these practices, policies, and/or procedures, on information and belief, are based purely on financial considerations, which resulted in the violation of Dr. Solman's civil rights.

7. Defendants have further demonstrated through their interactions with Plaintiff that Defendants' employees are not properly trained regarding civil rights, mobility accommodations, or how to interact with mobility-impaired individuals.

8. Defendants' discrimination sends a message that it is acceptable for medical providers to adopt practices, policies, and/or procedures that deprive mobility-impaired individuals of the opportunity to be full partners in their receipt of healthcare services.

9. The ADA expressly contemplates injunctive relief aimed at the modification of the practices, policies, and/or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods… 42 U.S.C. § 12188(a)(2).

10. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants take all steps necessary to bring their practices, policies, and/or procedures regarding accessibility to the disabled into full compliance with the requirements set forth in the ADA and its implementing regulations so that disabled persons have equal access to healthcare;

   b. Defendants change their practices, policies, and/or procedures so that the accessibility barriers at Defendants' facilities do not reoccur; and

  c. Plaintiff's representatives monitor Defendants' facilities to ensure the injunctive relief ordered pursuant to Paragraph 10.a. and 10.b. has been implemented and will remain in place.

## PARTIES

11. Plaintiff, Susan Solman, is, and at all times relevant hereto was, a resident of Miami, Florida. Dr. Solman was paralyzed from the chest down after receiving surgery to remove a tumor from her spinal cord. She uses a wheelchair for mobility. Since her diagnosis, Dr. Solman has worked hard to incorporate disability education into the physician assistant and medical school curriculum to educate practitioners on the disparities faced by individuals with disabilities in the healthcare system. Dr. Solman is an advocate and a sought-after speaker on the topic of disability awareness, with a focus on the healthcare disparities that exist for people with physical disabilities. She has appeared at conferences in the U.S. and internationally. In her spare time, Dr. Solman co-founded "The Raw Beauty Project," a visual arts exhibit that received global media attention and was featured in Oprah Magazine.

12. Defendant, Baptist Health South Florida, Inc., is a Florida corporation organized and existing under the laws of Florida with its principal place of business located at 6855 Red Road, Suite 600, Coral Gables, Florida, 33143.

13. Defendant, Baptist Health Medical Group, Inc., is a Florida corporation organized and existing under the laws of Florida with its principal place of business located at 6855 Red Road, Suite 600, Coral Gables, Florida, 33143.

14. Dr. Solman has been treated at Defendants' facilities, including attempting to obtain diagnostic services at the facility located at 709 Alton Road, Suite 100, Miami Beach, Florida, 33139.

15. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and Defendants are thus subject to the requirements of the ADA and the Rehabilitation Act.

16. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as Does 1 through 10 (the "Doe Defendants") are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to allege their true names and capacities when known. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

17. Plaintiff alleges that Defendants, including the Doe Defendants, and each of them at all times mentioned in this Complaint were the alter egos, agents, and/or employees, and/or employers of their Co-Defendants, and in doing the things alleged in this Complaint, they were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL BACKGROUND

**Dr. Solman Has Been Denied Full and Equal Access to Defendants' Facilities**

18. Dr. Solman visited Defendants' facility located at 709 Alton Road, Suite 100, Miami Beach, Florida, 33139 multiple times over the past few years to obtain various medical services.

19. Plaintiff utilizes a wheelchair for mobility. At her visits to Defendants' facilities to receive medical treatment, Plaintiff encountered numerous accessibility barriers that made it difficult, if not impossible, to access her medical care. She encountered these barriers during an appointment on December 23, 2022 where she attempted to receive vital diagnostic tests, including

a kidney ultrasound and bone density test. Dr. Solman faced a litany of barriers that include, but are not limited to, the following:

- Prior to her appointment with on December 23, 2022, Dr. Solman contacted the facility to inform them of her disability and state her need for accommodations for transfer assistance. Defendants later returned her call to confirm that the facility had the necessary equipment to provide assistance.

- On the date of her appointment, Dr. Solman presented to Defendants' diagnostic services office located at 709 Alton Road, Suite 100, Miami Beach, Florida, 33139, to obtain three diagnostic tests: a kidney ultrasound, a bone density test, and a thyroid scan. These tests were ordered by Dr. Solman's primary care provider.

- Dr. Solman was called for her bone density test first. Defendants' employee asked for Dr. Solman's weight, asking her to get onto an inaccessible scale. Defendants' employee then asked her to get onto the testing table, to which Dr. Solman *again* stated that she would need assistance in transferring. Defendants' employee stated that they were unable to help Dr. Solman transfer to the table. Dr. Solman requested to speak with the manager, Johanna Ruiz.

- Ms. Ruiz echoed Defendants' inability to transfer Dr. Solman to the diagnostic table, stating repeatedly: "We cannot get you safely over to the table and so we are not able to get you your care." Dr. Solman suggested various accommodations—including getting a gurney from the surgical suite in the same facility—to aid in transferring, but to no avail. Dr. Solman then requested to speak to the regional director, Ms. Goyes, who Ms. Ruiz then called. The facility manager echoed the same, stating that they were unable to provide the services to Dr. Solman *solely*

6

*because of her disability*. Ms. Goyes explained that Dr. Solman should set up an appointment at a different facility, and Ms. Goyes "did not know why Dr. Solman came here because they have never been able to provide transfer accommodations." Dr. Solman stated that she would like to receive the tests she was scheduled for because it was the holidays and rescheduling the tests would cause unnecessary delay on receiving vital healthcare. Baptist refused.

- At some point during the conversation with Ms. Goyes, Ms. Ruiz called the police to remove Dr. Solman from the facility. The police arrived and removed Dr. Solman from the facility. The police report substantiates the narrative. It confirms:

  Miss Ruiz stated that due to Ms. Solman being wheelchair bound and unable to assist with moving herself out of the wheelchair onto the medical exam, they were not able to perform the medical scan she had the appointment for.

- Ms. Ruiz further informed the officers that "[Baptist] will not be able to assist her with any future appointments at the location."

20. In addition to Defendants' outright refusal to treat Plaintiff because of her disability, the facility contains various barriers, including, but not limited to:

   a. The diagnostic tables are not accessible, evidenced by Defendants' refusal to treat Plaintiff;

   b. There are no patient lifts for transfer or portable lifts, and Plaintiff was never offered such a lift.

   c. There are no wheelchair accessible weight scales, nor was Dr. Solman ever offered the use of such.

   d. The staff were untrained on how to provide full and equal access to their services to mobility-impaired individuals, due to Defendants' lack of, or

7

wholly inadequate, policies, practices, and procedures regarding ADA requirements.

21. As a result of Defendants' failure to ensure mobility accommodations for Dr. Solman and outright denial of access and services, she was refused services that ambulatory patients would have been provided. Dr. Solman was subjected to discriminatory treatment because of her disability.

22. Despite this difficulty, frustration, and unequal treatment, Dr. Solman will seek Defendants' healthcare services in the future because there are limited medical care options compatible with her primary care physician, because of the proximity of Defendants' facilities to her home, and because of her insurance coverage. Specifically, Dr. Solman anticipates returning to Defendants' facilities to receive additional medical care and medical testing, but is deterred from doing so due to the discrimination she has faced and expects to face in the future. For example, in October 2023, Dr. Solman's primary care physician requested that she get a chest x-ray and wrote an order for Defendants' facility. Plaintiff, knowing Defendants do not have accessible tables or transfer equipment, could not obtain this imaging at the facility and chose to go elsewhere. Furthermore, she intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of accessibility standards.

## **JURISDICTION AND VENUE**

23. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

24. This Court has personal jurisdiction over Defendants because Defendants maintain their headquarters in Florida, have sufficient minimum contacts with Florida, or have otherwise purposely availed themselves of the markets in Florida through the promotion, marketing, and sale

of their services in Florida to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendants are registered to do business in Florida and have been doing business in Florida.

25. Venue is proper under 28 U.S.C. § 1391(a) and (b)(2). Defendants are subject to personal jurisdiction in this District because Defendants do substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendants also engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101 et seq.]

26. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

27. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq., was in full force and effect and applied to Defendants' conduct.

28. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

29. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of walking. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

30. Defendants own, lease, and/or operate a comprehensive system of healthcare services, including numerous primary care, hospitals, and specialty services, which are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

31. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

32. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

33. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

34. Defendants discriminated against Plaintiff on the basis of her disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their places of public accommodation, and equal opportunity to participate in and benefit from Defendants' healthcare services, in violation of the ADA.

35. As set out above, absent injunctive relief, there is a clear risk that Defendants' actions will recur with Plaintiff and/or other mobility-impaired persons seeking Defendants' healthcare services.

36. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

37. Plaintiff incorporates the allegations in paragraphs 1 through 25 as if alleged herein.

38. Plaintiff is an individual with a disability protected by Section 504 of the Rehabilitation Act and qualified to receive health services through Medicare. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

39. Defendants are recipients of federal financial assistance from the Department of Health and Human Services and are subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

40. Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

41. Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. § 84.52(a)(2)-(3).

42. Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services to individuals who are mobility-disabled and use wheelchairs. 45 C.F.R. § 84.52(b), (d).

43. A recipient may not directly, or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

44. Defendants' provision of healthcare services constitutes a program or activity receiving federal financial assistance and, as a recipient, they are required to ensure that both Defendants and its contractors comply with Section 504 of the Rehabilitation Act.

45. Defendants have failed and are failing to meet their obligation to provide mobility-impaired individuals an equal opportunity to use and benefit from their healthcare programs and activities. In failing to provide wheelchair patients like Dr. Solman with accessible facilities, Defendants have refused to provide the aids and services necessary to provide such patients medical treatment in an equally effective and timely manner that protects their privacy and independence.

46. Some examples of Defendants' inaccessible facilities for mobility-impaired individuals are listed in paragraphs 19 and 20 above.

47. Because Dr. Solman and other mobility-impaired individuals cannot independently access the medical facility, they must either find and rely on third party assistance, which intrudes upon the privacy of their personal medical information or forego accessing their critical healthcare altogether. Defendants' failure to provide equally effective accommodations to mobility-impaired patients puts their health at risk. This is especially pronounced in the failure to have accessible exam rooms, transfer equipment, accessible weight-scales, or staff equipped to help Plaintiff maneuver and transfer, and refusing to treat Plaintiff because of her disability.

48. As a result of Defendants' actions and omissions, Dr. Solman and other mobility-impaired individuals have suffered and will continue to suffer irreparable harm in the form of discrimination and unequal access to Defendants' healthcare services. If there is no change in the status quo, Plaintiff and other mobility-impaired individuals will be denied their right to access and engage fully in the provision of their healthcare.

49.     Defendants' failure to meet their obligations to accommodate mobility-impaired patients in an effective manner constitutes an ongoing and continuous violation of the ADA and the Rehabilitation Act and their implementing regulations. Unless restrained from doing so, Defendants will continue to violate the ADA and the Rehabilitation Act. Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

50.     Defendants' refusal to accommodate mobility-impaired patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Plaintiff and other mobility-impaired individuals.

51.     Plaintiff is entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Plaintiff is also entitled to compensatory damages as provided by the statute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

A.      Accepting jurisdiction of this case and declaring Defendants' policies, procedures, and services are discriminatory and violate the ADA and the Rehabilitation Act;

B.      Requiring Defendants to alter the identified medical facility locations to make them accessible to and usable by individuals with disabilities to the extent required by the ADA and the Rehabilitation Act;

C.      Directing Defendants to evaluate their policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures at the identified medical facility locations above;

D.      Mandating Defendants to expeditiously make all reasonable and appropriate modifications in their policies, practices, and procedures, remove all architectural barriers at the

identified medical facility locations that are readily achievable and technically feasible as required by law, and to take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated, or otherwise treated differently and discriminated against;

E. Awarding reasonable attorneys' fees, expert fees, costs, and expenses to Plaintiff;

F. Awarding compensatory damages for the intentional discrimination, humiliation, distress, and anxiety suffered by Plaintiff pursuant to Section 504 of the Rehabilitation Act;

G. Awarding such other and further relief as the Court deems necessary, just, and proper; and,

H. Retaining jurisdiction of this case until Defendants has fully complied with the orders of this Court.

Dated: January 22, 2024                     Respectfully Submitted,

*/s/ John B. Rosenquest IV*
John B. Rosenquest IV
Fla. Bar No. 48431
jay@rosenquestlawfirm.com
**ROSENQUEST LAW FIRM P.A.**
8325 NE 2nd Avenue, Suite 114
Miami, Florida 33138
Phone: (305) 607-5115

and

Benjamin J. Sweet
ben@nshmlaw.com
**NYE, STIRLING, HALE, MILLER & SWEET LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: (412) 742-0631
*To Seek Pro Hac Vice Admission*

and

Jonathan D. Miller
jonathan@nshmlaw.com
Alison M. Bernal
alison@nshmlaw.com
**NYE, STIRLING, HALE, MILLER & SWEET LLP**
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345
*To Seek Pro Hac Vice Admission*

*Attorneys for Plaintiff, Susan Solman*