# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| SUSAN SOLMAN, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>     vs.<br><br><br>BAPTIST HEALTH SOUTH FLORIDA, INC.; BAPTIST HEALTH MEDICAL GROUP, INC.; and DOES 1-10,<br><br>        Defendants. | Case No. 1:24-cv-20257-JLK |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF THE FACTS ......................................................................... 3

   A.  Background .................................................................................................. 3

   B.  Procedural History ...................................................................................... 6

III.   ARGUMENT ................................................................................................... 7

   A.  Standard of Review .................................................................................... 8

   B.  Defendants Operate Medical Facilities in Florida ................................... 9

   C.  Defendants Continue to Violate the ADA ............................................... 12

      i.  Plaintiff's Claims are Not Moot ....................................................... 13

     ii.  Training and Policies ......................................................................... 16

   D.  RA & ACA .................................................................................................. 17

IV.  CONCLUSION ................................................................................................. 18

i

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Choate*, 469 U.S. 287 (1985) ................................................................................. 7

*Badillo v. Thorpe*, 158 Fed. App'x. 208 (11th Cir. 2005) ............................................................ 1

*Barberi v. Lopez Tires, Inc.*, No. 23-CV-21168, 2024 WL 1174085 (S.D. Fla. Mar. 18, 2024).. 15

*Blake Tishman, P.A. v. Baptist Health S. Fla. Inc.*, No. 17-62230-CIV, 2018 WL 11252894 (S.D. Fla. Sept. 13, 2018) ............................................................................................................... 11

*Burkes v. Dylewski*, No. 1:14-CV-22079-UU, 2016 WL 9526685 (S.D. Fla. June 30, 2016) ..... 11

*Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000) ............................................................................ 1

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 8

*Dudley v. Hannaford Bros. Co.*, 333 F.3d 299 (1st Cir 2003) .................................................... 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............... 13

*Gil v. SMG Holdings I, LLC*, 2018 WL 2435162 (S.D. Fla. May 29, 2018) ................................ 13

*Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986-CIV, 2022 WL 180638 (S.D. Fla. Jan. 20, 2022) ...................................................................................................................................... 11

*In re Wright*, ADV. 04-9156, 2005 WL 6488101 (Bankr. N.D. Ga. Aug. 9, 2005) ..................... 11

*Johnson v. Baptist Health S. Fla., Inc.*, No. 16-23029-CIV, 2017 WL 2988275 (S.D. Fla. June 14, 2017) ...................................................................................................................................... 10

*Longhini v. West 97 Corp.*, 2016 WL 3751640 (S.D.Fla. July 13, 2016) .................................... 13

*Marable v. Marion Military Inst.*, 906 F. Supp. 2d 1237 (S.D. Ala. 2012) ................................ 14

*Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329 (11th Cir.2005) ............................................ 13

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

*Natl. All. for Accessibility, Inc. v. McDonald's Corp.*, No. 8:12-CV-1365, 2013 WL 6408650 (M.D. Fla. Dec. 6, 2013) .................................................................................................... 15

*Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995) ................................................... 2

Peninsula Petroleum Ltd. v. CI Int'l Fuels LLC, No. 22-CV-20712, 2024 WL 3571409 (S.D. Fla. May 17, 2024) .............................................................................................................. 11

*Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224 (S.D. Fla. 2005) ........................ 11

*Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328 (11th Cir. 1988) ............................... 8

*Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir.2007) ............................. 13, 14

*Shotz v. City of Plantation, Fla*., 344 F.3d 1161 (11th Cir. 2003) ................................................ 8

*Silva v. Baptist Health S. Fla., Inc*., 856 F.3d 824 (11th Cir. 2017) .................................. 1, 9, 10

*Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007) ............................................................. 8

*Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005) ..................................................... 7

*Steelman v. Fla*., 2013 U.S. Dist. LEXIS 36814 (M.D. Fla. Feb. 19, 2013) ................................ 2

*Suave v. Lamberti*, 597 F. Supp. 2d 1312 (S.D. Fla. 2008) ......................................................... 8

**Statutes**

29 U.S.C. § 794(a) ...................................................................................................................... 17

42 U.S.C. § 12101(b) .................................................................................................................. 12

42 U.S.C. § 12102(1)(A) ............................................................................................................. 12

42 U.S.C. § 12181(7)(F) ............................................................................................................. 13

42 U.S.C. § 12182(a) ..................................................................................................... 1, 2, 12, 17

42 U.S.C. § 12182(b)(2)(A)(ii) .............................................................................................. 12, 16

42 U.S.C. § 12182(b)(2)(A)(iv) ................................................................................................... 12

42 U.S.C. § 12188(a) ................................................................................................................... 12

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

42 U.S.C. § 18116(a) ................................................................................................................ 17

**Rules**

*City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274 (11th Cir. 2019) ........................... 9

Fed. R. Civ. P. 56(d) ................................................................................................................ 9

**Regulations**

28 C.F.R. § 36.304(a) ............................................................................................................... 17

45 C.F.R § 84.7(a) .................................................................................................................... 17

45 C.F.R. § 84.4 ....................................................................................................................... 17

45 C.F.R. § 84.6(c)(1) .............................................................................................................. 18

45 C.F.R. § 84.8 ....................................................................................................................... 18

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

## I.   __INTRODUCTION__

Plaintiff Susan Solman ("Dr. Solman" or "Plaintiff") suffered discrimination when she was denied treatment at Defendants' facility because of her disability—in violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and the Affordable Care Act ("ACA").

A violation of the ADA, and resulting violation of the RA and the ACA[1], requires: (1) Dr. Solman has a qualifying disability; (2) Baptist's Facilities are places of public accommodation; and (3) Baptist discriminated against Dr. Solman on the basis of her disability. 42 U.S.C. § 12182(a). Of these elements, only the third is at issue in this motion, as Defendants do not contest that Dr. Solman has a qualified disability, nor that its medical facilities are places of public accommodation—only arguing that Baptist Health South Florida, Inc. ("BHSF") does not operate these facilities. But Defendants ignore the Eleventh Circuit's previous finding on the same. *See Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 842 (11th Cir. 2017) (declining to dismiss parent organization of medical facilities because the parent organization "owns and operates the hospitals at which Plaintiffs presented, it houses the network to which the VRI machines are connected, and applies its various policies and procedures to Baptist Hospital, SMH, and affiliated outpatient facilities").

Consistent with its corporate policies and training, Defendants refused to perform medically necessary diagnostic testing because of Dr. Solman's disability. This is discrimination in its plainest form. When Dr. Solman attempted to advocate for her federally protected civil rights, Defendants called the police to intervene and had Dr. Solman forceable removed. It is clear that

---

[1] These statutes are interpreted identically for all relevant aspects and can be considered together. *Badillo v. Thorpe*, 158 Fed. App'x. 208, 214 (11th Cir. 2005); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

Defendants attitude has not changed. In a classic case of victim-blaming, Defendants assert that

Dr. Solman exercising her civil rights is "misplaced revenge." ECF. No. 57 ("Mot.") at p. 2. This,

combined with Defendants' unsubstantiated statements and key omissions, evidences the case has

not been mooted and is not appropriate for summary judgment.

Critical to Defendants' argument is their repeated assertion that BHSF does not "own[],

lease[], nor operate[] any medical facility at issue in this action." *See* Mot. at pp. 1, 2, 5, 6. The

relevant inquiry to determine if an entity is an "owner" or "operator" as defined by 42 U.S.C. §

12182(a), is whether the defendant "specifically controls the modification of the [things at issue]

to improve their accessibility to the disabled." *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066

(5th Cir. 1995); *Steelman v. Fla.*, 2013 U.S. Dist. LEXIS 36814, 4-5 (M.D. Fla. Feb. 19, 2013)

("to "operate" a place of public accommodation means to exercise control over the alleged

discriminatory action and to have the authority to take remedial measures."). That inquiry starts

and ends with Defendants' own sworn declarations, discovery responses, purchase orders, and

established caselaw—all of which undermine its position.

In Defendants' words, "BHSF provides certain back-office support services, including

Legal, Finance, Payroll, Supply Chain and Human Resources. (Moorman Decl. at ¶ 9)."

Defendants' Undisputed Fact ¶ 8. Indeed, as the "Director of Employee and Corporate Health

Services at Baptist Health South Florida," Lisa Miranda-Sixto, "along with the Corporate

Ergonomics Team, *work with system level leadership at each Baptist Health facility to implement*

*the Safe Patient Handling Program including purchasing of necessary equipment and related staff*

*training.*" *See* ECF No. 59-4 ("Miranda-Sixto Decl.") at ¶ 3 (emphasis added).

The centralized corporate policies and training are vital to Defendants' structure, and its

failure has resulted in—and continues to cause—widespread discrimination that stems from the

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

parent entity, BHSF. *See* Plaintiff Undisputed Fact ("PUF")[2] 26. This is evident from its corporate hierarchy—upon which Defendants also rely. *See* ECF No. 61 at Ex. A. Indeed, Defendants' sole policy, Policy No. BHM-20200-66560-450.01, the "Guidelines for Patients and Guests with Disabilities" ("ADA Policy"), is devoid of any mention of the ACA and its specific requirements. PUF 27. The ADA Policy further contains no language instructing employees that reasonable modifications to policies and programs should be made to ensure that people with disabilities have an equal opportunity to enjoy all of its programs, services, and activities. PUF 28. The ADA Policy does not set forth any policy, practice, or procedure related to patient transfers of mobility-disabled patients, and on information and belief no such policy, practice, or procedure exists. PUF 29.

Because Defendants improperly refused participation in discovery and have failed to show the case has been mooted, Plaintiff requests this Court to deny Defendants motion for summary judgment in its entirety. Alternatively, Plaintiff requests the Court deny this motion pursuant to Rule 56(d) to allow Plaintiff the necessary discovery.

## II.    STATEMENT OF THE FACTS

### A.    Background

Plaintiff Susan Solman was paralyzed from the chest down after receiving surgery to remove a tumor from her spinal cord over 20 years ago. PUF 1. Dr. Solman is a clinical pharmacist, a podiatric physician, and an Associate Professor of Pharmacology at Florida International University - Herbert Wertheim College of Medicine where she specializes in disability and inclusion in healthcare facilities. PUF 2. Because of her disability, Dr. Solman is limited in the major life activity of walking and utilizes a wheelchair for mobility purposes. Dr. Solman is an

---

[2] "PUF" refers to Plaintiff's supplemental statement of facts, filed concurrently.

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

advocate and a sought-after speaker on the topic of disability awareness, with a focus on the healthcare disparities that exist for people with physical disabilities. PUF 3.

On August 2, 2022, Dr. Solman visited the Baptist Health facility located at 709 Alton Road, Suite 100, Miami Beach, Florida, 33139 for a pre-operation examination for her colorectal surgery. She was not offered any Hoyer lift, nor accessible scale to obtain her weight, for the examination and the chest x-ray that was done on the same day. PUF 4.

On August 17, 2022 to August 22, 2022, Dr. Solman visited Baptist Health for her surgery. On arrival, all of the time in the hospital, and on departure, Dr. Solman was not offered a Hoyer lift to transfer. During the hospital stay, Dr. Solman was repeatedly improperly transferred by two employees, despite the discomfort she was experienced because of her surgery. PUF 5. Dr. Solman was set for a further appointment at Defendants' facility located at 709 Alton Road, Suite 100, Miami Beach, Florida, 33139. PUF 6.

On the date of her appointment, December 23, 2022, Dr. Solman presented to Defendants' diagnostic services office to obtain three diagnostic tests. First, Dr. Solman was asked to get onto an inaccessible scale—which she was unable to do. The Baptist employee then asked her to get onto the testing table, to which Dr. Solman *again* stated that she would need assistance in transferring. Defendants' employee stated that they were unable to help Dr. Solman transfer to the table. Dr. Solman requested to speak with the manager, Johanna Ruiz. PUF 8. Ms. Ruiz echoed Defendants' inability to transfer Dr. Solman to the diagnostic table, stating repeatedly: "We cannot get you safely over to the table and so we are not able to get you your care." Dr. Solman suggested various accommodations—including getting a gurney from the surgical suite in the same facility— to aid in transferring, but to no avail. Dr. Solman requested to speak to the regional director, Ms. Goyes, who Ms. Ruiz then called. PUF 9. The facility manager echoed the same, stating that they

were unable to provide the services to Dr. Solman *solely because of her disability*. Ms. Goyes explained that Dr. Solman should set up an appointment at a different facility, and Ms. Goyes "did not know why Dr. Solman came here because they have never been able to provide transfer accommodations." Dr. Solman stated that she would like to receive the tests she was scheduled for because it was the holidays and rescheduling the tests would cause unnecessary delay on receiving vital healthcare. Baptist refused. PUF 10.

Ms. Ruiz called the police to remove Dr. Solman from the facility. The police arrived and removed Dr. Solman from the facility. The police report substantiates the narrative. Ms. Ruiz further informed the officers that "[Baptist Health] will not be able to assist her with any future appointments at the location." PUF 11.

On October 4, 2023, Dr. Solman visited her primary care physician because she was generally not feeling well, with complaints that included, but not limited to, concerns over her breathing. PUF 12. The medical assistant wanted to take Dr. Solman's vitals. Dr. Solman requested that she be weighed to get an accurate weight, but the office did not have an accessible scale. Instead, the employees attempted to pick Dr. Solman up to put her on the inaccessible scale. Dr. Solman quickly refused. PUF 13. The office did not have a Hoyer lift to transfer over to the table for the doctor to perform the necessary exam. PUF 14. Because Dr. Solman was concerned about her breathing symptoms, she inquired about whether she should have a chest x-ray. The doctor responded, "well wasn't it a problem for you before to get tests at this location?" Dr. Solman replied, "yes". The doctor replied, "Well, I will give you an order and we will see what happens." PUF 15. Dr. Solman attempted to access the diagnostic-area on the floor below, but there was a sign on the door that said the office was temporarily closed for a meeting. PUF 16.

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

On May 3, 2024, Dr. Solman called Baptist's centralized telephone line to schedule an appointment for a kidney ultrasound. Dr. Solman spoke with a Baptist employee, Marjorie. PUF 17. Dr. Solman informed Marjorie that she needed to get a diagnostic test and requested that it be at the Baptist-Davie location. PUF 18. Marjorie told Dr. Solman that all diagnostic facility phone numbers go to their central scheduling line. PUF 19. After confirming personal information, Dr. Solman gave the order number. Marjorie then put Dr. Solman on hold while she phoned the Baptist-Davie location. When Marjorie returned, she confirmed that the location could perform the testing. Marjorie asked Dr. Solman whether she would need assistance or used a wheelchair, Dr. Solman confirmed that she does. PUF 20. Marjorie then told Dr. Solman that because she has a mobility limitation, she could not be seen at the Baptist-Davie location, and she would have to go to a hospital. PUF 21. Dr. Solman asked if she could be seen at any other location, but Marjorie stated that Dr. Solman could only be seen at the hospital facility and that "*our diagnostic centers cannot make special accommodations if you need help transferring out of a wheelchair.*" PUF 22.

### B.      Procedural History

Dr. Solman initiated this action on January 22, 2024, after she was refused treatment because of her disability at Baptist's diagnostic facility. *See* ECF No. 1. Specifically, Plaintiff was confronted with an inaccessible diagnostic table at Defendants' medical facility and when she requested transfer equipment to safely transfer to the diagnostic table, Defendants refused to treat her and had Dr. Solman forcibly removed from the facility. ECF No. 1 at ¶ 19. Plaintiff alleges that Defendants failure to provide her full and equal access is, in part, a result of Defendants' improper practices, policies, and/or procedures for persons with disabilities. Plaintiff brought this lawsuit to ensure that Defendants provide her, and other mobility-disabled persons, with accessible

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

facilities, accessible equipment, and trained staff—in compliance with the ADA, the Rehabilitation Act, and the ACA. PUF 34.

Plaintiff filed the Complaint on January 22, 2024. ECF No. 1. Thereafter, Defendants requested, and Plaintiff agreed to stay the lawsuit pending a mediation scheduled for March 29, 2024. *See* ECF No. 8. In advance of the mediation, Defendants produced the policy titled "Guidelines for Patients and Guests with Disabilities." PUF 24. Defendants stated that this is the only policy relevant to the case. PUF 25.

This Court granted Dr. Solman's motion for leave to amend on August 22, 2024, ECF No. 33. On August 26, 2024, Plaintiff's Second Amended Complaint ("SAC") was filed and became the operative complaint. ECF No. 34. Therein, Plaintiff stated:

Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following statewide class:

> All wheelchair users with qualified mobility disabilities who encountered (a) a refusal to be treated; (b) difficulty ensuring effective patient transfers; (c) staff untrained to effectively treat mobility-disabled patients; and/or (d) inaccessible equipment including not limited to exam tables, patient scales and diagnostic equipment within any facilities owned, operated, or controlled by Baptist Health South Florida, Inc., Baptist Health Medical Group, Inc., and Does 1 through 10.

ECF No. 34 at ¶ 44.

## III.   <u>ARGUMENT</u>

Baptist discriminated against Dr. Solman in violation of the ADA, RA, and the ACA by failing to afford her full and equal access to its facilities services. *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) (citing 42 U.S.C. § 12182(a)) ("Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations."); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (Rehab Act assures that people with disabilities

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

have "meaningful access" to federally funded programs). Dr. Solman described this discrimination,

> It's a terrible experience that I wish for no one. You feel ostracized. I felt less than. I felt scared because I was not able to access the health care I needed and I felt worried what would happen in the future, and concern for people like myself who cannot access their health care in such a large facility that takes care of so many people in South Florida.

PUF 46.

### A.     Standard of Review

"Summary Judgment is appropriate where the court is satisfied 'that there is no genuine issue as to any material fact and that moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330-31 (1986) (quoting Fed. R. Civ. P.56 (c)). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1184 (11th Cir. 2003). If a reasonable fact finder could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988) (citation omitted). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See Id*.

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that ... it cannot present facts essential to justify its opposition" to summary judgment, "the court may (1) defer considering the motion or deny it; (2) allow time to obtain

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R.

Civ. P. 56(d); *see also City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1287 (11th

Cir. 2019).[3]

### B. Defendants Operate Medical Facilities in Florida

The undisputed evidence presented by Defendants proves that BHSF operates the facilities

in its network. This is an argument Defendants have tried, and failed, to shirk its liability

previously. *See Silva*, 856 F.3d at 842. There, the Eleventh Circuit found:

> **Defendants argue that all claims against Baptist Health are improper because it is the parent organization to Baptist Hospital and SMH; it is not itself a medical facility at which Plaintiffs presented with medical needs. We reject this contention.** There is no rule that a covered entity under the ADA or RA must be the direct service-provider—in fact the ADA addresses itself to those who own, lease, or operate a place of public accommodation. 42 U.S.C. § 12182(a). Baptist Health owns and operates the hospitals at which Plaintiffs presented, it houses the network to which the VRI machines are connected, and applies its various policies and procedures to Baptist Hospital, SMH, and affiliated outpatient facilities. We thus decline to excuse Baptist Health from the lawsuit on this basis.

*Id.* (emphasis added.)

Plaintiff's class incorporates all facilities owned, operated, or controlled by Defendants—

the "subject facilities" is Defendants network of facilities in Florida, all of which are required to

follow the corporate policies of the parent corporation, BHSF. These subsidiary entities control

the day-to-day operations, consistent with the guidance from BHSF. *See* Miranda-Sixto Decl. at ¶

3. In fact, Defendant's own production reveals that Baptist Health South Florida, Inc. is the parent

entity that exhibits control over its subsidiaries. PUF 31.[4]

---

[3] Plaintiff has filed a request, pursuant to Fed. R. Civ. P. 56(d) for Defendants to fully respond to discovery prior to ruling on this motion. *See* Decl. of Bernal.

[4] Other documents prove the same. The policy titled "Guidelines for Patients and Guests with Disabilities" was created by "The Office of Patient Experience" and applies network-wide. The author, Yvette C. Castro, was a former employee of Baptist Health South Florida, Inc.. *See* https://www.linkedin.com/in/yvettecas/. PUF 32. As another example, Defendant's "Notice of Privacy Practices" lists the "affiliated covered entities" of Baptist Health South Florida, Inc. *See*

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

Citing the lack of control of its subsidiaries, Defendants have wholly refused to participate in discovery. For example, Plaintiff requested a Rule 30(b)(6) designated witness on the topic of Defendants "accessibility policies, practices and/or procedures." Defendants answered:

> Defendants neither own nor operate any medical facility in the State of Florida and, therefore, do not have accessibility policies, practices and/or procedures. Defendants are unable to designate anyone to testify on this topic.

PUF 34. But its own filings prove otherwise. *See* Miranda-Sixto Decl. at ¶ 3 ("[BHSF] work with system level leadership at each Baptist Health facility to implement the Safe Patient Handling Program including purchasing of necessary equipment and related staff training.") Of course, this is consistent with the fact that Defendants allege that Baptist Health South Florida, Inc. lease the building at Alton Road to its subsidiary, Baptist Outpatient Services, Inc.. *See* ECF No. 61 ("Moorman Decl.") at ¶ 9. Further evidencing the control exhibited by BHSF is the fact that both purchase orders were ordered by BHSF, purchased by BHSF, and billed to BHSF. *See* ECF No. 59-2 ("Ricard Decl.") at Exs. A-B. This is confirmed by the Assistant Vice President for Baptist Outpatient Services. Ricard Decl. at ¶ 3.

This is consistent with Courts finding the same. *See, e.g., Silva*, 856 F.3d at 830 ("Baptist Health [defined as Baptist Health South Florida, Inc.] does not provide any healthcare services; **rather, it owns and operates medical facilities**, including Baptist Hospital and SMH, which provide such services.") (emphasis added.); *Johnson v. Baptist Health S. Fla., Inc.*, No. 16-23029-CIV, 2017 WL 2988275, at *1 (S.D. Fla. June 14, 2017) ("Baptist Health [defined as Baptist Health South Florida, Inc.] is a non-profit corporation **providing "centralized administrative**

---

https://baptisthealth.net/hipaa-notice-of-privacy-practices. The notice further directs a user to a six-page list of  affiliated entities of Baptist Health South Florida, Inc. https://baptisthealth.net/-/media/Documents/PDFs/BHSF/HIPAA/HIPAA-entities-2023.pdf. PUF 33.

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

functions" to affiliated hospitals in South Florida, including South Miami Hospital.") (emphasis added.)[5]

On one hand, and when it is *inconvenient* for its arguments, Defendants claim that they cannot produce a witness. Then on the other hand, when it is *convenient* for its arguments, show that there is the corporate level control of these policies and procedures—the very position that Plaintiff has held from the beginning. To this end, and pursuant to Fed. R. Civ. P. 56(d), Plaintiff renews her request[6] to have Defendants properly respond to her discovery, to take the Fed. R. Civ. P. 30(b)(6) deposition of Defendants and submits that Miranda-Sixto possesses the knowledge for that deposition.

---

[5] *See also Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986-CIV, 2022 WL 180638, at *1 (S.D. Fla. Jan. 20, 2022) (finding that Baptist Health South Florida, Inc. is the parent corporation that "employs approximately 23,000 people and, in 1989, created a 403(b) employee retirement plan."); *Burkes v. Dylewski*, No. 1:14-CV-22079-UU, 2016 WL 9526685, at *1 (S.D. Fla. June 30, 2016) ("Baptist Health [defined as Baptist Health South Florida, Inc.] operates eight hospitals throughout South Florida, including Baptist Hospital and SMH."); *Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1229 (S.D. Fla. 2005) ("Baptist Health South Florida, Inc. is a not for profit corporation and the parent of the largest system of hospitals serving South Florida."); *Blake Tishman, P.A. v. Baptist Health S. Fla. Inc.*, No. 17-62230-CIV, 2018 WL 11252894, at *1 (S.D. Fla. Sept. 13, 2018), on reconsideration, No. 17-62230-CIV, 2019 WL 3890774 (S.D. Fla. Feb. 11, 2019) ("Baptist Health [defined as Baptist Health South Florida, Inc.] is a healthcare organization operating multiple hospitals and outpatient medical centers.")

[6] It is Plaintiff's position that Magistrate Judge Reid erred in denying Plaintiff's motion to compel Defendants to answer discovery and provide its witnesses for depositions. It is settled that Plaintiff may obtain discovery from the parent organization. As stated by the Court in *Peninsula Petroleum Ltd. v. CI Intl. Fuels LLC*, "[n]umerous courts have addressed the concept of 'control' as between corporate entities; virtually all of the published decisions have required production by the nonparty corporation." *Costa*, 277 at 471 (quoting *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 617 (S.D.W. Va. 2010)). "[C]ontrol is defined as 'the legal right, authority, or ability to obtain upon demand documents in the possession of another.' " *In re Wright*, ADV. 04-9156, 2005 WL 6488101, at *3 (Bankr. N.D. Ga. Aug. 9, 2005) (citations omitted)." No. 22-CV-20712, 2024 WL 3571409, at *9 (S.D. Fla. May 17, 2024), *report and recommendation adopted*, No. 22-CV-20712, 2024 WL 4122112 (S.D. Fla. Sept. 9, 2024).

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

**C.       Defendants Continue to Violate the ADA**

Title III of the Americans with Disabilities Act[7] and its implementing regulations mandate "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a). The ADA defines discrimination to include: (1) "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," 42 U.S.C. § 12182(b)(2)(A)(ii), and (2) "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv). To enforce these prohibitions, the ADA provides to any person "subjected to discrimination," *see* 42 U.S.C. § 12188(a), a private right of action.

The ADA is "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and provides "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). "It sends a bluntly worded message to those establishments that fall within its purview: you may not discriminate against an individual in the full and equal access to goods and services on the basis of a disability." *Dudley v. Hannaford Bros. Co*., 333 F.3d 299, 303 (1st Cir 2003).

Dr. Solman is disabled within the meaning of the ADA, *see* 42 U.S.C. § 12102(1)(A), PUF 35, and the Baptist facilities at the center of this lawsuit constitute places of "public

---

[7] Title III of the ADA was enacted in 1990, approximately thirty-five (35) years ago, and the obligation to undertake ADA improvements is a continuing one. *See* U. S. Department of Justice, The Americans with Disabilities Act, Title III Technical Assistance Manual, Covering Public Accommodations and Commercial Facilities (Nov. 1993) (III 4.400 p.35).

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

accommodation." *see* 42 U.S.C. § 12181(7)(F); PUF 36. Accordingly, the issue is whether the barriers and lack of training that Dr. Solman faced at the Baptist Facilities constitute discrimination under the ADA. They unquestionably do.

### i. *Plaintiff's Claims are Not Moot*

To determine mootness in a case where a defendant claims a voluntary cessation of ADA violations, the Eleventh Circuit has found that a district court should consider the following three factors: (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir.2007). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness ." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (internal quotation marks omitted). Defendants fail to meet this heavy burden. Here, Defendants have "not met its 'formidable,' 'heavy burden' of meeting the Supreme Court's 'stringent' standard for mootness in a private voluntary cessation case—showing that it is. 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Longhini v. West 97 Corp*., 2016 WL 3751640 (S.D.Fla. July 13, 2016); *see also Gil v. SMG Holdings I, LLC*, 2018 WL 2435162, at *3 (S.D. Fla. May 29, 2018). Indeed, it is clear that any change of the Defendants' conduct was "simply to deprive the Court of jurisdiction." *Id*.; see also *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir.2005) (per curiam) ("voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.")

13

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

When analyzed under the factors set forth in *Sheely,* 505 F.3d at 1184, it is clear Defendants actions have not mooted the case.

First, Dr. Solman's experiences were not isolated or unintentional—rather, the discrimination is a result of BHSF's inadequate corporate policies. Despite Defendants claiming to the contrary, ***the conduct did recur***. As stated above, on May 3, 2024—*after* Defendants state that it has mooted the violations—Dr. Solman called Baptist's centralized telephone line to schedule an appointment for a kidney ultrasound but was told that because she has a mobility limitation, she could not be seen at the Baptist-Davie location, and she would have to go to a hospital. Dr. Solman asked if she could be seen at any other location, but Marjorie stated that Dr. Solman could only be seen at the hospital facility and that "*our diagnostic centers cannot make special accommodations if you need help transferring out of a wheelchair.*" (emphasis added).

Indeed, Defendants have offered no evidence—outside of its self-serving declarations that it has changed its policies, practices, and procedures to accommodate those with disabilities. PUF 37. The declarations lack any personal knowledge and are based purely on hearsay. *See* Fed. R. Civ. P. 56(c)(4) ("an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") This is evidenced by the declarations themselves. *See* Miranda-Sixto Decl. at ¶ 6 ("Per information provided to me . . ."); Ricard Decl. at ¶ 3 (explaining that he is the custodian of records, but has no personal knowledge). These declarations should be stricken. *See Marable v. Marion Military Inst.*, 906 F. Supp. 2d 1237, 1250 (S.D. Ala. 2012) (striking affidavits containing irrelevant statements, conclusory assertions with no probative value, inadmissible hearsay, and statements based upon belief rather than personal knowledge).

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

The second factor contemplates whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit. Despite Defendants' convenient contortion of the facts, **all of Defendants' actions occurred after the discrimination of Dr. Solman**—unquestionably in anticipation of a lawsuit. PUF 38. Defendants' vague and overly broad assertions regarding the purchasing of equipment and the alleged training of its employees also fail on arrival. First, whether Defendants have shown it has remedied the equipment violations, "they've nonetheless failed to "establish," based on the Sheely factors, "that it is absolutely clear that the violations alleged in the complaint cannot reasonably be expected to recur." *Barberi v. Lopez Tires, Inc*., No. 23-CV-21168, 2024 WL 1174085, at *4 (S.D. Fla. Mar. 18, 2024) quoting *Gil*, 2018 WL 2435162, at *2; *Natl. All. for Accessibility, Inc. v. McDonald's Corp*., No. 8:12-CV-1365, 2013 WL 6408650, at *7 (M.D. Fla. Dec. 6, 2013) (rejecting Defendant's argument that no relief was available because structural features had been remediated and stating, "[w]hile some aspects of this case may have become moot, the Court finds that, at a minimum, the scope of an injunction directed to maintenance and future compliance remains at issue.")

The third and final factor weighs heavily for Plaintiff. The Eleventh Circuit mandates this Court to look at whether "defendant has acknowledged liability." Here, Defendants describe Dr. Solman's advocacy for her civil rights as "misplaced revenge." Mot. at 2; ECF No. 39. Defendants further describe the facts of the case as being "nothing discriminatory or illegal," *id*., and "Plaintiff's claims are as misguided in principle as they are legally." *Id*. Suffice to say, Defendants have far from "acknowledged liability."

Because Defendants have failed to show that they meet any of the Sheely factors, let alone meet its formidable burden, Plaintiff's case is not moot.

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

ii.      ***Training and Policies***

The failures of Baptist's policies, practices, and procedures with regard to training its medical staff amounts to discrimination under the ADA and Defendants have offered no evidence that it has remedied its policies, practices, and procedures. *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

In 2010, the U.S. Department of Justice, Civil Rights Division, published guidance ("DOJ Guidance")[8] to assist medical providers in complying with the requirements of the ADA. The DOJ Guidance highlights the critical importance of staff training within healthcare facilities, *id*. at 15, and states:

> A critical, but often overlooked component to ensuring success is adequate and ongoing training of medical practitioners and staff. **Purchasing accessible medical equipment will not provide access if no one knows how to operate it. Staff must also know which examination and procedure rooms are accessible and where portable accessible medical equipment is stored.** Whenever new equipment to provide accessible care is received, staff should be immediately trained on its proper use and maintenance. New staff should receive training as soon as they come on the job and all staff should undergo periodic refresher training during each year.

*Id*. Even if Baptist did purchase such equipment, the inadequate policies and training would still render the equipment useless. The DOJ Guidance addresses this issue in the Q&A section: "[t]o properly and safely assist patients with transfers, medical staff will likely need training on how to operate the equipment and on safe patient handling techniques." *Id*. And also states: "This training will need to address how to operate the accessible equipment, how to assist with transfers and positioning of individuals with disabilities, and how not to discriminate against individuals with disabilities." *Id*.

Despite its blanket, unsupported assertions that it has completed training, Baptist has provided no evidence that the training has been provided to all employees, provided no evidence

---

[8] *See* DOJ Civil Rights Division, *Access to Medical Care for Individuals with Mobility Disabilities*, (Updated Jun. 26, 2020), https://www.ada.gov/medcare_mobility_ta/medcare_ta.htm.

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

of what the training is or what it incorporates, nor has it provided any evidence that employees are now aware—35 years after its passing—that the ADA prohibits denial of service based on a patient's disability. The sole Baptist policy—which has not been updated since 2019—is wholly inadequate.

### D.    RA & ACA

Like the ADA, which provides for "full and equal enjoyment" of public accommodations to people with disabilities, 42 U.S.C. § 12182(a), Section 504 of the RA prohibits disability discrimination by recipients of federal funds by mandating compliance with certain provisions to ensure non-discrimination. *See* 29 U.S.C. § 794(a) (no individual with a disability shall "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"); 45 C.F.R. § 84.4. Similarly, Section 1557 of the ACA, enacted years later, prohibits discrimination based on any of the grounds protected under the RA, and other statutes, during the provision of health care. 42 U.S.C. § 18116(a).

Here, it is undisputed that the Facilities contain numerous barriers—including that interfered with Dr. Solman's full and equal enjoyment of Baptist's services. Baptist's failure to remove these barriers constitutes discrimination under the RA and ACA. *See* 28 C.F.R. § 36.304(a). While the facilities fail for the same reason as stated above, there are also specific violations of the RA and ACA that Defendants have failed to mention, let alone remediate. For example, the Facilities do not have designated Section 504 coordinators, as required by 45 C.F.R § 84.7(a), nor does it specify an ADA Coordinator or responsible employee, whose job it is to ensure compliance with the policy and facilitate the resolution of accessibility complaints. PUF 40, 41. The ADA Policy also fails to specify a Grievance procedure. PUF 42. Additionally, despite

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

the RA's mandate that Baptist performs self-evaluations for its compliance, including "evaluat[ing], with the assistance of interested persons, including handicapped persons or organizations representing handicapped persons, its current policies and practices and the effects thereof that do not or may not meet the requirements of this part." 45 C.F.R. § 84.6(c)(1), Baptist does not offer any evidence that it has *ever* performed any such self-evaluation. PUF 43. Further, and as stated above, Defendants' corporate-wide ADA Policy is devoid of *any mention* of the ACA and its specific requirements and fails to make clear that Defendants may not refuse to treat an individual on the basis of their disability as mandated by the ACA, and echoed by the ADA and the Rehabilitation Act. PUF 44. The ADA Policy also fails to specify the public notice that is required to be provided to individuals with disabilities and the form of that notice. *See,* 45 C.F.R. § 84.8. PUF 45.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' motion for summary judgment, and provide Plaintiff the opportunity to complete the discovery necessary.

Dated: January 16, 2025                    Respectfully Submitted,

Alison Bernal
alison@nshmlaw.com
**NYE,  STIRLING,  HALE,  MILLER  &
SWEET, LLP**
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345

Benjamin J. Sweet
ben@nshmlaw.com
**NYE,  STIRLING,  HALE,  MILLER  &
SWEET, LLP**
101 Pennsylvania Boulevard, Suite 2,

*Solman v. Baptist Health S. Fla., Inc., et al.*, Case No. 1:24-cv-20257-JLK

Pittsburgh, PA 15228
Phone: (412) 857-5350

/s/ John B. Rosenquest IV
John B. Rosenquest IV
Fla. Bar No. 48431
jbr@khllaw.com
jay@rosenquestlawfirm.com
**ROSENQUEST LAW FIRM P.A.**
8325 NE 2nd Avenue, Suite 114
Miami, Florida 33138
Phone: (305) 607-5115
*Attorneys for Plaintiff Susan Solman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Response to Defendants' Opposition to Motion for Summary Judgment* was served by CM/ECF filing system on January 16, 2025, on all counsel or parties of record on the service list.

Respectfully Submitted,

*/s/ John B. Rosenquest IV*
John B. Rosenquest IV

**Service List**

Scott Allen
scott.allen@jacksonlewis.com
Ryan B. Weiss
ryan.weiss@jacksonlewis.com
**JACKSON LEWIS P.C.**
One Biscayne Tower
2 South Biscayne Blvd., Suite 3500
Miami, Florida 33131
*Counsel for Defendants*